188 La. 430
## STATE of Louisiana v. Jacques WEIL.
### No. 34550.

Supreme Court of Louisiana.

Nov. 2, 1937.

J. B. Nachman, of Alexandria, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and A. V. Hundley, Dist. Atty., and Ben. F. Thompson, Jr., Asst. Dist. Atty., both of Alexandria, for the State.

ROGERS, Justice.

The defendant, Jacques Weil, appeals from his conviction and sentence for violating an ordinance of the police jury of Rapides parish adopted on January 15, 1935. The appeal is supported by bills of exception reserved by defendant to the overruling of his motions to quash, for a new trial and in arrest of judgment, in each of which he assailed the constitutionality and legality of the ordinance.

The issues in the case are identical with the issues in the case of State v. Roy Reed, 177 So. 252, of this court, this day decided.

For the reasons assigned in the case of State v. Reed, supra, the conviction and sentence herein appealed from are annulled, the motion to quash is sustained, and defendant is ordered discharged.

HIGGINS, J., takes no part.

## MANSAUR v. ANDING.
### No. 1761.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

Thomas Arthur Edwards, of Lake Charles, for appellant.

W. C. Perrault, of Opelousas, for appellee.

OTT, Judge.

The suit is against Mrs. Susan E. Anding, widow of A. A. Anding, deceased, in which plaintiff seeks to recover on several notes signed by Mrs. Anding as comaker with her deceased husband. The notes on which suit is brought are as follows: One note for $500, dated March 6, 1926, due one year from date with 8 per cent. per annum interest from date, with the interest paid to March 6, 1931; one note for $450, dated October 25, 1930, due in one year, with 8 per cent. from date, on which note a payment of $100 was made on September 30, 1931, and the interest paid to October 25, 1931; seven notes dated October 3, 1931, due monthly beginning January 1, 1932, with 8 per cent. interest from date, the sum of $25 having been paid on the first note of the series, and the interest paid thereon to February 1, 1932, and $50 paid on the last six notes on May 6, 1932. The suit is for the balance of the principal and interest on these notes, plus attorney's fees of 10 per cent. on the principal and interest.

Defendant admitted in her answer that she signed the notes sued on as comaker with her deceased husband, but she averred that the notes have been paid in full.

The suit was filed in November, 1933, and shortly thereafter, and before answer was filed, the original petition and notes attached thereto were lost or misplaced. Diligent search failed to locate these documents, and the case went to trial on an agreement between the attorneys that the copy of the petition served on defendant would stand in the place of the original, with the further agreement that the notes

were properly described in the petition and the indorsements on the back of the notes showed the payments on principal and interest as alleged in the petition.

The case went to trial and resulted in a judgment for plaintiff in the amount sued for. The judgment was rendered on February 27, 1934. The minutes show that the defendant obtained an order for a suspensive and devolutive appeal to this court on March 13, 1934, returnable on May 10, 1934. Evidently this appeal was not perfected, for in February, 1935, defendant obtained an order for a devolutive appeal, returnable on March 18, 1935. The record, according to a certificate of the clerk of the district court, was sent to the clerk of this court on March 7, 1935. The record was withdrawn from the clerk of this court by the attorneys for defendant with the consent of the attorney for plaintiff on March 14, 1935, the attorneys then representing the litigants not being the same attorneys as now appear of record in the case. The entire record was lost, and another search made for it without any indication of fault on any one as to the loss of the record.

The appeal was dismissed by this court, as the certificate of the clerk of the district court showed that the record was filed in this court long after the return day fixed in the first order of appeal above referred to. 171 So. 187. But with the light now before us it is obvious that the appeal was perfected under the second order for a devolutive appeal made returnable to this court on March 18, 1935, as stated, and therefore the appeal was filed in this court in time. We make this statement here in justice to the attorneys then handling the case for the appellant as well as in justice to the clerk of the district court who forwarded the record to this court. In so far as the defendant is concerned, she has suffered no injury as on application for rehearing, we remanded the case for the purpose of ascertaining, if possible, whose fault caused the loss of the record, the date of making the deposit for the appeal, etc. 174 So. 115.

Pending this remand of the case and before evidence was taken on the matters to be heard on the remand, the record was found in the Attorney General's office and by that official forwarded to the Clerk of this court at the same time addressing a letter to the judge of the district court and the attorneys in the case, advising them that he had found the record in his office in a soiled and dusty condition, with the further information that he was unable to state how or when the record got on the floor of the Attorney General's office, but that he had ascertained that the papers had been left in his office more than a year previously by some one with no delivery to anyone in the office, and with no occasion for a delivery to any one in that office.

The present attorneys entered into an agreement with the view of reconstructing as much as possible this disordered and partly mutilated record in order that the case might be submitted to this court for a decision on the merits. Certain admissions and agreements were made with reference to missing documents and erasures on documents found in the old record.

We have given this rather full history of the case by way of explanation of the long delay in getting a hearing on the merits, and also to exonerate from blame any officials or attorneys who had anything to do with the record. Attorneys for the respective parties have changed since the beginning of the case, one of these attorneys, Honorable L. L. Perrault, having departed this life. We cannot leave this phase of the case without the observation that all of the attorneys now or previously connected with the case have manifested an earnest effort to get the record in shape so that the issues between their clients could be presented to and decided by the courts on the merits of the case. And the further observation that the history of the case, as well as the record in it, presents a most unusual and baffling situation, the like of which we trust will never occur again.

The plaintiff is unable to read and write, but can sign his name. It appears that he has been quite successful in a business way, accumulating some money. The deceased husband of defendant assisted plaintiff in his clerical affairs, in fact, acting as a kind of financial secretary for him. Mr. Anding, for some ten or twelve years before his death, drew up notes for plaintiff, wrote letters for him, and kept account of the transactions plaintiff had with various persons to whom he loaned money at interest. Mr. Anding himself borrowed from plaintiff giving his note usually signed by his wife as comaker. Mr. Anding worked in the St. Landry Bank, and looked after the credits on the notes given to plaintiff by the various borrowers, including Mr. Anding's own notes. As a matter of

convenience, it appears that these notes were kept in a package and left at the bank accessible to both Mr. Anding and plaintiff. When a payment was made on a note, the credit entry was made on the note by Mr. Anding, even on his own notes. Plaintiff had implicit confidence in the honesty of Mr. Anding.

As a means of keeping a record of the notes due him, plaintiff had an old bank passbook which he kept on his person, and when a note was given him, he had Mr. Anding enter in this passbook the name of the borrower as well as the amount and due date of the note. When the note was paid in full, Mr. Anding would draw a line through the entry of the note in the book. When only partial payments were made on the notes, or the interest paid, an indorsement of the payment was made on the back of the note by Mr. Anding, but no entry was made in the passbook until the note was paid in full. Mr. Anding died in January, 1932.

In this passbook from the year 1926 until Mr. Anding's death, there appear some 36 notes signed by Mr. Anding, all of which have been lined out except the notes herein sued on. The entries are in the handwriting of Mr. Anding.

It is also shown by uncontradicted testimony that the indorsements of credits on the notes sued on were made in the handwriting of Mr. Anding. Plaintiff says that these notes were in the bank in the package with his other notes and that he went to the bank and got them out a few days after Mr. Anding's death. An officer of the bank corroborates plaintiff on this point to the extent of saying that plaintiff did come to the bank a few days after the death of Mr. Anding and got some notes, but he could not say that they were the notes involved in this case.

Shortly after Mr. Anding's death plaintiff's attorney wrote Mrs. Anding, the defendant, with a view of having her arrange to settle these notes. In May, 1932, the defendant sent plaintiff's attorney a check for $50 to apply on the notes, stating in the letter accompanying the check that she hoped to be able to settle with Mr. Mansaur within the next month. Further demands were made on defendant for payment of the notes in June and July following without any response. Just after this suit was filed in November, 1933, defendant wrote plaintiff's attorney, stating that she had pledged two shares of bank stock on the $500 note in 1926, and that she had an offer for this

stock in 1931 sufficient to pay the note, but that plaintiff had lost or misplaced the stock and could not deliver the stock to her. In this letter she also stated that she had found a large number of checks issued by her deceased husband to plaintiff which she claimed were more than sufficient to pay all the notes due him.

■ Having admitted the execution of the notes and alleged their payment, it devolved on defendant to prove payment with legal and reasonable certainty. She relies on two principal facts to prove the payment.

■ In the first place, she contends that the canceled checks payable to plaintiff show the payment of more than enough to cover all notes held by him against her and her deceased husband; that having shown these payments to plaintiff it is incumbent on him to show the application he made of them. The total amount of these checks is $3,641.14, and cover a period from September 18, 1926, to December 1, 1931. The checks are for various amounts and do not indicate what they are given for. But these checks avail defendant little in showing payment, for the reason that the total amount of all notes given to plaintiff from 1926 to the death of Mr. Anding, as shown in the passbook, is more than $5,300, and if we assume that all these checks were to apply on these notes, they would not all be paid.

As further proof that the notes were paid, defendant relies on a statement alleged to have been made by her deceased husband to plaintiff just prior to his death and at a time when death was impending. According to defendant and her daughter, Mr. Anding sent for plaintiff to come to his home, and asked plaintiff if he had ever found the bank stock and the notes; that plaintiff replied that he had not, whereupon Mr. Anding told him that he (Mr. Anding) was tired of excuses; that he wanted plaintiff to get the bank stock and the notes and give them to an official of the bank. The plaintiff's version of what was said by Mr. Anding on his sick bed was to tell plaintiff not to worry; that the bank will be alright, and if anything happened to him, he had some insurance, and his wife would pay plaintiff.

There evidently had been some conversation previously between Mr. Anding and his wife about this bank stock of hers which was held by plaintiff as security on the $500 note. It is also shown that some

effort had been made to sell this bank stock in 1931, and for some reason which does not clearly appear, plaintiff either could not find the stock or did not care to surrender it. It is indicated by the testimony of defendant that she was concerned about the return of the stock and had discussed it with her husband. It is our opinion that whatever statement Mr. Anding might have made about the return of papers had reference to the location of this bank stock. This bank stock has been accounted for and is not set up as a payment or offset against the notes. Mr. Anding knew that the notes were in the bank and were accessible to him at any time, and he had no occasion to be concerned about his own notes.

Not only does the evidence fail to show that the notes have been paid, but the facts and circumstances show that the notes have not been paid, as we will undertake to show as briefly as possible.

We will first take the series of notes dated October 3, 1931, for $50 each. According to the passbook in Mr. Anding's handwriting, there were nine of these notes maturing monthly, beginning November 1, 1931. Two of them are lined out as paid, leaving those due January 1, 1932, and subsequent months as unpaid. On the note due January 1, 1932, there was indorsed in Mr. Anding's own handwriting, a credit of $25 on January 2, 1932, with interest paid to February 1, 1932. This was just a few days before Mr. Anding died, and there is nothing to show any further payment on these notes after that date, and it is not reasonable to suppose that he paid them before his death as the notes were not then due and he had paid the interest on the past due note so as to extend it to February 1, 1932. The defendant evidently realizes this inconsistency in her contention because in her answer she undertakes to get around this situation by alleging that while these notes were dated October 3, 1931, they were actually executed earlier in that year and were paid before December 1, 1931, by these canceled checks. Yet there is absolutely no evidence to support this allegation nor is there any reason shown why Mr. Anding should either antedate or postdate any of his notes.

The indorsement made on the back of the $500 note dated March 6, 1926, shows the interest paid to March 6, 1931. This indorsement was made by Mr. Anding. It is therefore evident that he acknowledged on that date that this note was not paid. There is certainly no evidence to show that this note was paid at any time after March 6, 1931, and before Mr. Anding's death some ten months later. There is no single item represented by the canceled checks showing anything like this amount in 1931, and it is admitted that this note was not lined out by Mr. Anding prior to his death.

The same thing can be said about the note for $450 dated October 25, 1930. This note was due October 25, 1931, and the indorsement made on the back of this note by Mr. Anding himself shows that $100 was paid on the note September 30, 1931, and the interest was paid to October 25, 1931. This was only three months or so before Mr. Anding died, and there is nothing to show that during this three months he paid all the balance of this note, but, on the contrary, by paying the interest to October 25, 1931, the due date of the note, rather indicates an intention to extend the note.

Learned counsel for defendant has endeavored to picture plaintiff as a Shylock demanding his pound of flesh, and has made reference to the valuable assistance rendered this plaintiff by the deceased husband of defendant, which services, if properly valued, would exceed by far the amount of these notes. But we have no such claim before us, and we cannot decide the case by forcing plaintiff to express his gratitude for these services by abstaining from the collection of the notes due him. We find no error in the judgment appealed from.

For the reasons assigned, the judgment is affirmed.